## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSEPH BESTMAN,** | : | **Civil No. 1:11-CV-984** |
| | : | |
| **Petitioner,** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **THOMAS DECKER, et al.,** | : | |
| | : | |
| **Respondents.** | : | |

## REPORT AND RECOMMENDATION

### I.   Statement of Facts and of the Case

### A.   Joseph Bestman's Criminal History

This case involves a habeas corpus petition filed by an immigration detainee and criminal recidivist, Joseph Bestman. Bestman is a native and citizen of Liberia, whose immigration status in this country was that of a lawful permanent resident alien. (Doc. 9, Ex. A, Notice to Appear, at 3).

Between 2006 and 2009 Bestman had a series of encounters with law enforcement, encounters which led to a battery of criminal convictions for the petitioner. This spiraling pattern of criminal conduct began on May 28, 2006, when Bestman was cited for retail theft by the Collingdale Police Department, Collingdale, Pennsylvania. (Doc. 9, Ex. B, Citation Record.) Nine months later, on August 14,

2007, Bestman was charged with simple assault, and pleaded guilty to this offense in the Court of Common Pleas of Delaware County, Pennsylvania. (Doc. 9, Ex. C, Police Criminal Complaint; Ex. D, Criminal Docket.) Eleven months later, Bestman incurred a series of additional charges and convictions when, on July 16, 2009, he was convicted in the Court of Common Pleas of Delaware County, Pennsylvania on charges of obstruction, resisting arrest, and retail theft, arising out of a series of separate incidents. (Doc. 9, Ex. E, DHS Notice of Intent to Offer Evidence.) Bestman was sentenced to 3-to-23 months' imprisonment following his conviction on these obstruction of justice and resisting arrest charges. (Doc. 9, Ex. H.)

### B.    The History of Bestman's  Removal Proceedings

By 2009, Bestman's multiple arrests and convictions had come to the attention of immigration officials who commenced removal proceedings against Bestman by issuing a Notice to Appear to the petitioner on September 29, 2009. (Doc. 9, (Ex. A, Notice to Appear, at 1.) As part of these removal proceedings, on November 12, 2009, immigration officials informed Bestman that he was subject to deportation pursuant to 8 U.S.C. §1227(a)(2)(A)(ii), "in that, at any time after admission, you have been convicted of a violation of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct" and  U.S.C. § 1227(a)(2)(A)(iii), "in that, at any time after admission, you have been convicted of an aggravated felony as defined in section 101(a)(43)(S) of the Act, an offense relating to obstruction of justice,

perjury or subornation of perjury, or bribery of a witness, for which the term of imprisonment is at least one year." (Doc. 9, Ex. A at 3.)

Because Bestman had been convicted of crimes that constituted aggravated felonies under immigration laws, on November 12, 2009, he was ordered detained by immigration officials pending completion of these removal proceedings. (Doc. 9, Ex. K.) As these removal proceedings progressed, additional grounds for removal were leveled against Bestman. Thus, on February 26, 2010, an additional charge was lodged against Bestman, specifically, Bestman was cited as being subject to removal under 8 U.S.C. § 1227(a)(2)(A)(iii), since he had, " been convicted of an aggravated felony as defined in section 101(a)(43)(F) a crime of violence (as defined in section 16 of Title 18, United States Code, but not including a purely political offense)for which the term of imprisonment (is) at least one year." (Doc. 9, Ex. F, Additional Charges of Inadmissibility/Deportability.) Four months later, on June 22, 2010, these charges were augmented when another charge was lodged against Bestman, specifically, a charged that Bestman had been " convicted before Magisterial District Court 32-1-23 in Delaware County, Pennsylvania of Retail Theft in violation of 18 Pa.C.S.A§ 3929(a)(1)."(Doc. 9, Ex. G, Additional Charges of Inadmissibility Deportability.)

While Bestman acknowledged that he was subject to removal from the United States due to these multiple convictions, the petitioner sought various forms of relief from removal, applying for asylum, seeking withholding of removal or cancellation

3

of removal, and requesting withholding of removal under Article III of the Convention

Against Torture. These claims, which were presented by Bestman, contributed to the

delay in these removal proceedings. Notwithstanding the array of claims made by

Bestman, the immigration court has addressed all of these requests for relief from

removal. Specifically, on February 9, 2011, following a hearing before an Immigration

Judge, Bestman was ordered removed from the United States to Liberia. In reaching

this conclusion the Immigration Judge rejected Bestman's applications for asylum,

withholding of removal, cancellation of removal, and withholding of removal under

Article III of the Convention Against Torture. (Doc. 9, Ex. H, Order of the IJ). Instead,

the Immigration Judge found that Bestman "was removable pursuant to [8 U.S.C. §

1227](a)(2)(A)(ii)," as an alien convicted of crimes of moral turpitude, (Doc. 9, Ex.

I, Oral Decision of the IJ, at 2), and concluded that Bestman had not met his burden

of proof as to any of the applications for relief from removal which he had presented.

(Id. at 8, 15). In reaching this result the Immigration Judge also spoke directly to the

issue of Bestman's criminal recidvism, noting that when considering Bestman's past

the court was confronted by "very, very serious negative factors." (Doc. 9, Ex. H., p.

13.) According to the Immigration Judge, Bestman "had been in the criminal system

for more years in the United States than not;" had been "continuously in and out of

4

the system, [had been] arrested on numerous occasions, and [had] a charge pending" at the time of the removal hearing; and had "a significant criminal record." (Id.)

Bestman has elected to challenge this removal finding. On March 4, 2011, Bestman filed an appeal of this decision with the Board of Immigration Appeals. (Doc. 9, Ex. J, Notice of Appeal from a Decision of an Immigration Judge). The appeal is still pending. Accordingly, at present, Bestman is not subject to a final order of removal, but remains detained pending the entry of such a removal order.

## C.    **Bestman's Habeas Petition**

Displeased by the fact of this continuing detention, a detention which is currently a function of his own litigation tactics, Bestman filed this *pro se* petition for a writ of habeas corpus on May 23, 2011. (Doc. 1.) This petition broadly challenges on statutory and constitutional grounds the ability of immigration officials to continue to hold the petitioner while he completes the litigation of this removal case. The Government has filed a response to this petition, (Doc. 9), and Bestman has filed a traverse, (Doc. 10), which is largely devoted to collateral challenges to his state convictions and substantive attacks upon immigration judge rulings, matters which are not properly before this Court. Therefore, this matter is now ripe for resolution.

Bestman's detention prior to the entry of a final removal order is governed by a series of statutory and constitutional standards. However, the application of these

statutory and constitutional benchmarks to this case leads to a single result. Because the period of detention experienced by Bestman during his removal proceedings is required by statute and does not offend constitutional due process principles, we recommend that the Court deny Bestman's petition at this time without prejudice to renewal of this claim, if warranted, at an appropriate future time.

## II.  Discussion

### A.  Introduction

In this petition, Joseph Bestman, a Liberian national and convicted felon, seeks to challenge his detention by immigration officials as excessive and unreasonable. While the precise tenor of this complaint is not entirely clear, it appears that the petitioner believes that this case involves excessive pre-removal detention under the mandatory detention provisions of 8 U.S.C. § 1226(c)(1)(B); and that his continued detention offends constitutional due process considerations. In addressing this concern, we must determine whether Bestman's detention is permitted by law, and further assess whether the duration of this detention pending the entry of a final removal order offends constitutional due process considerations. In this case, for the reasons set forth below, we find that Bestman's detention is both mandated by statute, and constitutionally permitted. Therefore, we recommend that this petition for a writ of habeas corpus be denied.

## B.   Bestman's Detention Pending Entry of A Removal Order Was Compelled By Statute and Does Not Violate Due Process

At the outset, we will examine the period of pre-removal detention experienced by Bestman, carefully scrutinizing that period of detention to ensure both that it was legally appropriate, and that it was not so excessive as to violate the petitioner's due process rights. In assessing the lawfulness of this detention, we begin by noting that, to the extent that Bestman complains about the duration of this pre-removal detention period, this detention appears to be compelled by statute. Section 1226 of Title 8, United States Code, directs the Attorney General to detain certain criminal aliens like Bestman pending removal, stating in clear and precise terms as follows:

> ( c ) Detention of Criminal Aliens--(1) Custody.--The Attorney General *shall* take into custody any alien who.--(B) is deportable by reason of having committed any offense covered in section 237(a)(2)(A)(ii), (A)(iii), (B), (C), or (D).

8 U.S.C. § 1226(c)(1)(B)(emphasis added).

By enacting this mandatory detention requirement for a sub-class of criminal aliens awaiting removal from the United States, Congress was responding to specific, immigration concerns caused by the failure to timely deport aliens who had used the liberties conferred by this nation as a license to commit crimes. As the Supreme Court has noted:

7

Congress adopted this provision against a backdrop of wholesale failure by the INS to deal with increasing rates of criminal activity by aliens. See, *e.g.,* Criminal Aliens in the United States: Hearings before the Permanent Subcommittee on Investigations of the Senate Committee on Governmental Affairs, 103d Cong., 1st Sess. (1993); S.Rep. No. 104-48, p. 1 (1995) (hereinafter S. Rep. 104-48) (confinement of criminal aliens alone cost $724 million in 1990). Criminal aliens were the fastest growing segment of the federal prison population, already constituting roughly 25% of all federal prisoners, and they formed a rapidly rising share of state prison populations as well. Id., at 6-9. Congress' investigations showed, however, that the INS could not even *identify* most deportable aliens, much less locate them and remove them from the country. Id., at 1. One study showed that, at the then-current rate of deportation, it would take 23 years to remove every criminal alien already subject to deportation. Id., at 5. Making matters worse, criminal aliens who were deported swiftly reentered the country illegally in great numbers. Id., at 3.The INS' near-total inability to remove deportable criminal aliens imposed more than a monetary cost on the Nation. First, as Congress explained, "[a]liens who enter or remain in the United States in violation of our law are effectively taking immigration opportunities that might otherwise be extended to others." S.Rep. No. 104-249, p. 7 (1996). Second, deportable criminal aliens who remained in the United States often committed more crimes before being removed.

Demore v. Kim, 538 U.S. 510, 518 (2003).

Recognizing these concerns, Congress mandated the detention pending completion of removal hearings of all criminal aliens, like Bestman, who are convicted of crimes involving elements of both violence and the obstruction of justice. In this case, it appears that Bestman falls within the narrow class of criminal aliens, convicted of aggravated felonies, who are subject to the mandatory detention provisions of 8 U.S.C. § 1226(c)(1)(B). Indeed, Bestman–who has been convicted over the past

several years of obstruction of justice, assault, resisting arrest, and theft–appears to be precisely the type of recidivist Congress had in mind when it enacted these mandatory detention provisions into the immigration laws. Therefore, by statute, Bestman is subject to mandatory detention pending the entry of a removal order in these proceedings. See Rodrigues v. Holder, No. 09-1764, 2010 WL 830929, *3 (M.D. Pa. March 4, 2010)(alien convicted of drug offenses subject to mandatory detention.)

Having determined as a matter of statutory construction that Bestman is subject to this mandatory detention, we further conclude, on the unique facts of this case, that Bestman cannot sustain a constitutional due process challenge to this mandatory detention. At the outset, to the extent that Bestman seeks to challenge the mere fact of his detention on due process grounds, that avenue of attack is now foreclosed by the United States Supreme Court's decision in Demore v. Kim, 538 U.S. 510 (2003). In Demore, the court addressed the issue of whether §1226 (c)(1)(B)'s mandatory detention provision violates due process. In terms that are equally applicable here, the court held that Congress acted within its broad authority to regulate immigration matters when it imposed mandatory detention on this narrow group of criminal aliens facing removal from the United States. As the court observed:

> In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." Mathews v. Diaz, 426 U.S. 67, 79-80, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976) . . . . And, since Mathews, this Court has firmly and

9

repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens. See, e.g., Zadvydas, 533 U.S., at 718, 121 S.Ct. 2491 (KENNEDY, J., dissenting) ("The liberty rights of the aliens before us here are subject to limitations and conditions not applicable to citizens"); Reno v. Flores, 507 U.S. 292, 305-306, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) ("Thus, 'in the exercise of its broad power over immigration and naturalization, "Congress regularly makes rules that would be unacceptable if applied to citizens" ' ") (quoting Fiallo v. Bell, 430 U.S. 787, 792, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977), in turn quoting Mathews, supra, at 79-80, 96 S.Ct. 1883)); United States v. Verdugo-Urquidez, 494 U.S. 259 (1990).

Demore, 538 U.S. at 521-522.

Acknowledging the authority of Congress in this field, the court then held that: "Detention during removal proceedings is a constitutionally permissible part of that process." Demore, 538 U.S. at 531 (citations omitted). Yet, while reaching the conclusion that mandatory detention of certain criminal aliens did not violate due process, the court emphasized the very brief duration of most removal proceedings which rarely exceeded five months, id. at 530, and noted that the six-month delay experienced by the alien in that case was a product of his own actions which delayed the entry of a final removal order. Id. at 531, n. 15. Given the fixed and finite term of any pre-removal detention, the court held that the fact of this mandatory detention did not violate due process.

Following Demore courts have frequently rebuffed efforts by criminal aliens to broadly challenge their detention pending removal. See, e.g., Tavares v. Attorney

General, 211 F. App'x 127 (3d Cir. 2007); Slebo v. District Director, No. 09-1335, 2009 WL 2151347 (M.D. Pa. July 17, 2009)(Munley, J.); Rodney v. Mukasey, No. 08-1386, 2009 WL 427171 (M.D. Pa. Feb. 20, 2009)(Muir, J.); Wright v. Bureau of Immigration and Customs Enforcement, No. 06-2278, 2007 WL 86263(M.D. Pa. Jan. 9, 2007)(Conner, J.). Yet these decisions rejecting broad due process challenges to pre-removal detention of criminal aliens do not wholly resolve the legal issues presented by this petition. In our view, consideration of the holding in Demore constitutes only the first part of our responsibility and analysis when reviewing claims like those presented by Bestman.

Demore holds that mandatory detention of certain criminal aliens pending removal proceedings does not, by itself, offend due process. However, the Demore court based this ruling upon its understanding of the short, fixed and finite term of any detention prior to removal. Thus, while Demore addressed the due process issues that arise from the mere fact that, for certain criminal aliens, detention pending removal is mandatory, courts still have an independent responsibility to assess whether the duration of any mandatory detention is so extended and unreasonable as to violate due process. See, e.g., Tijani v. Willis, 430 F.3d 1241 (9th Cir. 2005); Ly v. Hanson, 351 F.3d 263 (6th Cir. 2004); Prince v. Mukasey, 593 F. Supp. 2d 727 (M.D. Pa. 2008);

Alli v. Decker, No. 09-698, 2009 WL 2430882 (M.D. Pa. Aug. 10, 2009); Occelin v. District Director, No. 09-164, 2009 WL 1743742 (M.D. Pa. June 17, 2009).

Several key benchmarks have emerged defining the contours of this constitutional protection against excessive detention pending removal hearings. First, in assessing these claims, we must look to the duration of the detention. Thus, in general, pre-removal detentions spanning a period of months do not present substantial constitutional issues. See e.g., Demore, 538 U.S. at 531(6 months); Rodrigques v. Holder, No. 09-1764, 2010 WL 830929, *3 (M.D. Pa. March 4, 2010)(one-year detention); Slebo v. District Director, No. 09-1335, 2009 WL 2151347 (M.D. Pa. July 17, 2009)(8 months); Rodney v. Mukasey, No. 08-1386, 2009 WL 427171 (M.D. Pa. Feb. 20, 2009)(18 months); Wright v. Bureau of Immigration and Customs Enforcement, No. 06-2278, 2007 WL 86263 (M.D. Pa. Jan. 9, 2007)(Conner, J.)(7 months). While periods of detention which significantly exceed one year may trigger constitutional concerns; see, e.g., Tijani v. Willis, 430 F.3d 1241 (9th Cir. 2005) (2 years 8 months); Ly v. Hanson, 351 F.3d 263 (6th Cir. 2004) (500 days); Prince v. Mukasey, 593 F. Supp.2d 727 (M.D. Pa. 2008) (16 months); Alli v. Decker, No. 09-698, 2009 WL 2430882 (M.D. Pa. Aug. 10, 2009) (9 and 20 months); Occelin v. District Director, No. 09-164, 2009 WL 1743742 (M.D. Pa. June 17, 2009) (2 years), detentions periods of as long as two years have been sustained by the courts where a

criminal alien is subject to mandatory detention and much of the pre-removal delay is a function of that criminal alien's litigation decisions during removal proceedings. See e.g., Jah v. Attorney General, 258 F. App'x 394 (3d Cir. 2007) (17-months detention); Tavares v. Attorney General, 211 F. App'x 127 (3d Cir. 2007) (24- months detention); Adler v. Dep't of Homeland Security, No. 09-4093, 2009 WL 3029328 (S.D.N.Y. sept. 22, 2009) (15-months detention); Contant v. Mukasey, No. 08-1852, 2009 WL 427244 (M.D.Pa. Feb. 20, 2009) (15-months detention); Rodrigques v. Holder, No. 09-1764, 2010 WL 830929, *3 (M.D. Pa. March 4, 2010) (one-year detention); Rodney v. Mukasey, No. 08-1386, 2009 WL 427171 (M.D. Pa. Feb. 20, 2009)(Muir, J.) (18 months).

As these cases reveal, the analysis here does not involve simple arithmetic. A qualitative assessment must also be made of the reasons for the delay in removal, and who bears responsibility for that delay. Therefore, when weighing claims of excessive delay made by immigration detainees challenging mandatory pre-removal detention, courts must also carefully assess the reasons for the delay. Where the delay is attributable to actions taken by the alien in the course of litigating the removal proceedings, courts typically will not hold the government accountable for that delay when conducting a due process analysis. See, e.g., Demore, 538 U.S. at 531, n.15; Castellanos v. Holder, 337 F. App'x 263 (3d Cir. 2009) (delay caused by alien's

litigation tactics); <u>Jah v. Attorney General</u>, 258 F. App'x 394 (3d Cir. 2007) (17-months detention); <u>Tavares v. Attorney General</u>, 211 F.Appx 127 (3d Cir. 2007) (24-months detention); <u>Rodrigques v. Holder</u>, No. 09-1764, 2010 WL 830929, *3 (M.D. Pa. March 4, 2010) (one-year detention held attributable to alien's litigation tactics); <u>Contant v. Mukasey</u>,  No. 08-1852, 2009 WL 427244 (M.D.Pa. Feb. 20, 2009) (15-months detention); <u>Prince v. Mukasey</u>, 593 F. Supp. 2d 727 (M.D. Pa. 2008).

Moreover, any consideration of an excessive pre-removal delay claim brought by a criminal alien who is pending removal from the United States should take into account the fact that, upon entry of a final removal order, different statutory and due process protections come into play, protections designed to ensure that aliens who have been ordered removed are not held in custody for an unreasonable period of time. Thus, once a final order of removal is entered, the due process protections afforded to aliens by <u>Zadvydas v. Davis</u>, 533 U.S. 678 (2001) apply. <u>See</u> <u>Matthias v. Hogan</u>, No. 07-1987, 2008 WL 913522 (M.D. Pa. March 31, 2008). Under <u>Zadvydas</u> aliens subject to such final removal orders typically must either be removed, or be given bail consideration, within six months. The availability of this relief from excessive detention following the entry of a final removal order, coupled with what is frequently the brief duration of removal proceedings, greatly reduces any due process concerns resulting from the duration of the mandatory detention of aliens pending the

completion of removal proceedings. Therefore, where, as here, the entry of a final order of removal may be imminent, these concerns about delay and extended detention are greatly reduced.

In this case, our review of these fundamental due process considerations leads us to conclude that the pre-removal delay experienced by Bestman presently does not offend due process. Immigration proceedings in this case began in November 2009, and an order of removal was entered in February of 2011, some 16 months later. This 16 month period of detention was attributable, in a substantial degree,  to Bestman's conduct of this litigation. In particular, during these proceedings, while Bestman acknowledged that he was subject to removal from the United States due to these multiple convictions, the petitioner also sought various forms of relief from removal. Indeed, at times Bestman has applied for asylum, sought withholding of removal or cancellation of removal, and requested withholding of removal under Article III of the Convention Against Torture. These claims, which were presented by Bestman to the Immigration Judge, substantially contributed to the first 16 months' delay in these removal proceedings.

With the entry of a removal order in February, 2011, the balance of the delay experienced in this case is now a function of Bestman's litigation choices and decisions in these removal proceedings, as he appeals these adverse rulings. While

these litigation choices may be understandable from Bestman's perspective, the delays caused by those choices should not be held against the Government when assessing this claim of pre-removal delay. See, e.g., Demore, 538 U.S. at 531, n.15; Castellanos v. Holder, 337 F. App'x 263 (3d Cir. 2009) (delay caused by alien's litigation tactics); Jah v. Attorney General, 258 F. App'x 394 (3d Cir. 2007) (17-months detention); Tavares v. Attorney General, 211 F. App'x 127 (3d Cir. 2007) (24-months detention); Rodrigques v. Holder, No. 09-1764, 2010 WL 830929, *3 (M.D. Pa. March 4, 2010) (one-year detention held attributable to alien's litigation tactics); Contant v. Mukasey, No. 08-1852, 2009 WL 427244 (M.D.Pa. Feb. 20, 2009) (15-months detention); Prince v. Mukasey, 593 F. Supp. 2d 727 (M.D. Pa. 2008).

Thus, an assessment of the factors which govern our due process analysis of Bestman's pre-removal detention militates against the petitioner. At the outset, on the facts of this case, the duration of Bestman's detention pending removal, standing alone, does not entitle the petitioner to relief, since of much of the past delay, and all of the current delay has been instigated by Bestman. Further, the anticipated duration of this detention appears both fixed and finite. Thus, this removal case should be promptly resolved once the BIA rules on Bestman's appeal. Therefore, in terms of the nature, quality and duration of this detention, this case falls within that range of cases where extended pre-removal detention that is largely attributable to the petitioner's

actions has been deemed permissible.  See, e.g., Jah v. Attorney General, supra (17-months detention); Tavares v. Attorney General, supra (24-months detention); Rodrigques v. Holder, supra; Contant v. Mukasey, supra.

Moreover, entry of a detention order in this case seems fully warranted in light of the Immigration Judge's factual findings regarding Bestman's capacity for criminal recidivism. As the Immigration Judge noted, when considering Bestman's past the court was confronted by "very, very serious negative factors." (Doc. 9, Ex. H., p. 13.) According to the Immigration Judge, Bestman "had been in the criminal system for more years in the United States than not;" had been "continuously in and out of the system, [had been] arrested on numerous occasions, and [had] a charge pending" at the time of the removal hearing; and had "a significant criminal record." (Id.) Thus, the detention order entered in this matter appears to be both legally justified and factually warranted given Bestman's criminal history.

Finally, in the event that Bestman becomes subject to an administratively final order of removal, his detention will be governed by a different, more rigorous, set of statutory and constitutional rules, rules designed to avoid further undue delay. First, by statute, once an alien like Bestman is subject to a final removal order, he may be detained under 8 U.S.C. § 1231(a), which directs the Attorney General to remove such aliens within 90 days of the entry of a removal order. 8 U.S.C. § 1231(a)(1)(A). The

statute then commands that "[d]uring the removal period the Attorney General shall detain the alien", 8 U.S.C. § 1231(a)(2), and with respect to criminal aliens provides that: "Under no circumstance during the removal period shall the Attorney General release an alien who has been found ...deportable under section 1227(a)(2) ... of this title." 8 U.S.C. § 1231(a)(2). For purposes of our analysis of any post-final order period of detention, this statutory ninety-day "removal period" during which detention is mandatory begins on the date the order of removal becomes administratively final. See 8 U.S.C. § 1231(a)(1)(B)(I).

Upon the entry of this final order, Bestman will also have further constitutional protections against undue delay and detention. For aliens awaiting removal, the contours of those rights are now defined by the United States Supreme Court's decision in Zadvydas v. Davis, 533 U.S. 678 (2001). In Zadvydas, the United States Supreme Court extended due process protections to aliens awaiting removal from the United States, while generally sustaining the validity of the initial mandatory detention period for such aliens during the ninety-day removal period prescribed by 8 U.S.C. § 1231(a)(1)(A). Beyond this initial 90-day period the court concluded that: "we think it practically necessary to recognize some presumptively reasonable period of detention." Id. at 701.

The court then observed that:

18

> While an argument can be made for confining any presumption to 90 days, we doubt that when Congress shortened the removal period to 90 days in 1996 it believed that all reasonably foreseeable removals could be accomplished in that time. We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months . . . . Consequently, for the sake of uniform administration in the federal courts, we recognize that period. After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Id. at 701.

Taken together, 8 U.S.C. § 1231(a)(1)(A) and Zadvydas create a statutory and constitutional framework for protecting the rights of aliens who are detained pursuant to administratively final removal orders. Under this framework, such aliens shall be detained for the first 90 days of the removal period and further detention beyond this 90-day period will be presumed reasonable up to a period of 6 months, at which time aliens subject to final removal orders must either be removed, or be given bail consideration.

Thus, in the instant case, Bestman's pre-removal detention is mandated by statute, is factually justified and is constitutionally permissible. Moreover, that pre-

19

removal detention will likely soon draw to a close given the current posture of these immigration proceedings, at which time, if the removal order is confirmed, Bestman will be entitled to the protection of different statutory and constitutional safeguards designed to ensure his timely removal from the United States.

Accordingly, on these facts we find that Bestman simply has not, at present, made a valid claim that he has been subjected to an unconstitutionally excessive period of pre-removal delay. Therefore, this petition should be denied without prejudice to future requests when, and if, Bestman's continued detention becomes sufficiently prolonged to trigger constitutional concerns.[1]

---

[1] In the alternative, if the court concludes that the duration of this detention warrants some relief, we note that, in the past, the courts have used various means to ensure that immigration detainees have their removal claims reviewed promptly. In some instances the court has directed immigration officials to conduct additional detention hearings. See, e.g., Prince v. Mukasey, 593 F. Supp.2d 727 (M.D. Pa. 2008)); Wilks v. U.S. Dep't of Homeland Security, No. 07-2171, 2008 WL 4820654 (M.D. Pa. Nov. 3, 2008); Thomas v. Hogan, No. 08-417, 2008 WL 4793739 (M.D. Pa. Oct. 31, 2008.) In other instances, the district court has conducted the bail review itself. Occelin v. District Director, No. 09-164, 2009 WL 1743742 (M.D. Pa. June 17, 2009). In still other instances, the remedy imposed by the court has been an order directing the outright release of the alien. See, e.g., Madrane v. Hogan, 520 F. Supp. 2d 654 (M.D. Pa. 2007); Victor v. Mukasey, No. 08-1914, 2008 WL 5061810 (M.D. Pa. Nov. 25, 2008); Nunez-Pimentel v. U.S. Dep't of Homeland Security, No. 07-1915, 2008 WL 2593806 (M.D. Pa. June 27, 2008.). If the court determines that some relief is justified here, it is recommended that this relief be narrowly tailored and limited to an order directing immigration officials to conduct a new detention hearing for the petitioner. See, e.g., Prince v. Mukasey, 593 F. Supp. 2d 727 (M.D. Pa. 2008)); Wilks v. U.S. Dep't of Homeland Security, No. 07-2171, 2008 WL 4820654

**III**.   <u>**Recommendation**</u>

For the foregoing reasons, upon consideration of this Petition for Writ of Habeas

Corpus,  IT IS RECOMMENDED that the Petition (Doc. 1) be DENIED without

prejudice to renewal at such time, if any, as the delay and detention become

unreasonable and excessive . The Parties are further placed on notice that pursuant to

Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in 28
> U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition
> of a prisoner case or a habeas corpus petition within fourteen (14) days
> after being served with a copy thereof. Such party shall file with the clerk
> of court, and serve on the magistrate judge and all parties, written
> objections which shall specifically identify the portions of the proposed
> findings, recommendations or report to which objection is made and the
> basis for such objections. The briefing requirements set forth in Local
> Rule 72.2 shall apply. A judge shall make a de novo determination of
> those portions of the report or specified  proposed findings or
> recommendations to which objection is made and may accept, reject, or
> modify, in whole or in part, the findings or recommendations made by the
> magistrate judge. The judge, however, need conduct a new hearing only
> in his or her discretion or where required by law, and may consider the
> record developed before the magistrate judge, making his or her own
> determination on the basis of that record. The judge may also receive

---

(M.D. Pa. Nov. 3, 2008);  <u>Thomas v. Hogan</u>, No. 08-417, 2008 WL 4793739
(M.D. Pa. Oct. 31, 2008.) This Court could then direct the Respondents to report
on the status of this hearing and allow the court to conduct further proceedings, if
necessary, once the agency has had an opportunity to re-examine this case. <u>See</u>
<u>Madrane v. Hogan,</u> 520 F. Supp. 2d 654 (M.D. Pa. 2007).

further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 28th day of June, 2011.

*S/Martin C. Carlson*

**United States Magistrate Judge**